**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ALICIA CONSUELO T.,

Plaintiff,

v. Civ. No. 25-334 KWR/GJF

FRANK BISIGNANO, *Commissioner of the Social Security Administration*,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PLAINTIFF'S MOTION TO REVERSE AND REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand (Dkt. No. 16) ("Motion"), dated September 2, 2025, challenging the determination of the Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act. The Motion is fully briefed. *See* Dkt. Nos. 18, 19. The Court has thoroughly reviewed the administrative record, the briefing, and the relevant law. For the reasons set forth below, the Court recommends the Motion be **DENIED** and this case dismissed with prejudice.[1]

## I. BACKGROUND

Plaintiff is 50 years old and has previous work experience as an executive assistant, technical trainer in human resources, and tax advisor. Administrative Record ("AR") at 28, 96, 106–107, 272. She filed an application for DIB in September 2019. AR at 268–72. In that application, she alleged that she became disabled on March 1, 2017, due to anxiety, depression, and post-traumatic stress disorder ("PTSD"). AR at 96–97. Her application was denied at the initial level (AR at 95–

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's June 1, 2026 Order of Reference. Dkt. No. 22.

108) and upon reconsideration (AR at 109–115). She requested a hearing (AR at 127–29]), which ALJ Joyce Frost-Wolf conducted on January 30, 2024 (*see* AR at 37–81). At the hearing, Plaintiff was represented by attorney Michael Frank Hacker and both she and vocational expert Gloria Lasoff testified. AR at 16, 37.

On April 15, 2024, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. AR at 16–28. Plaintiff requested Appeals Council review of the ALJ's unfavorable decision (AR at 121), but the Council denied review (AR at 1–7), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then timely filed her Complaint in this case seeking review of the Commissioner's decision. Dkt. No. 1.

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citation omitted). The first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden at steps one through four. *See Bowen*

*v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

**B. Substantial Evidence**

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is

more than a mere scintilla." *Id.* at 103 (quotation and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III. PLAINTIFF'S CONTENTIONS

Plaintiff contends the ALJ: (1) failed to properly assess Plaintiff's physical impairments of obesity and venous insufficiency; (2) failed to account for moderate mental limitations in Plaintiff's residual functional capacity ("RFC") assessment; (4) failed to account in the RFC assessment for moderate limitations assessed by non-examining state agency psychological consultants; (5) failed to properly assess Plaintiff's subjective complaints; and (6) otherwise failed to properly assess Plaintiff's mental impairments. Dkt. No. 16 at 6–19.

## IV. ALJ'S DECISION AND FINDINGS

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity

during the period from her amended alleged onset date of April 1, 2018, through her date last insured of March 31, 2024." AR at 18 (citing 20 C.F.R. § 404.1571). At step two, she found that Plaintiff had five severe impairments: schizoaffective disorder, bipolar type; depressive disorder; post-traumatic stress disorder (PTSD); anxiety disorder; and obsessive-compulsive disorder." AR at 31 (citing 20 C.F.R. § 404.1520(c)). The ALJ concluded at step three that none of these impairments, individually or collectively, matched the severity of "listed impairments." AR at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

**B. Steps Four and Five**

At step four, the ALJ found that Plaintiff's statements concerning the severity of her symptoms "[were] not entirely consistent with . . . the . . . evidence" in the record. AR at 22. The ALJ also discussed, among other things, Plaintiff's medical records, the prior administrative findings of the non-examining consultants, and the opinions of a psychological consultative examiner. *See* AR at 21–26.

Also at step four, the ALJ determined that Plaintiff had the RFC to perform a range of medium work[2] with the following limitations:

> [S]he could occasionally perform climbing; could not work around heavy machinery with fast moving parts or at unprotected heights; could understand and remember simple tasks; could maintain attention, concentration and pace for simple tasks in two-hour periods; could not have public contact; could perform tasks that focus on objects; could have occasional coworker and supervisory contact other than periods of instruction (periods of instruction being the initial training and explanation of changes to routine or tasks); and could make simple work-related decisions.

AR at 21.

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. Among other things, medium work typically "requires walking or standing for approximately six hours of the day" and "frequent stooping and crouching." POMS DI § 25001.00(A)(46).

In light of her RFC findings, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. AR at 27. Nevertheless, she found at step five that, given Plaintiff's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," such as cleaner, hand packager, and dishwasher. AR at 27–28. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 28.

## V. DISCUSSION

### A. The ALJ did not commit reversible error in her consideration of Plaintiff's non-severe impairments.

Plaintiff first alleges that the ALJ failed to properly assess her obesity and venous insufficiency/varicose veins, ignoring workplace limitations caused by these impairments in her RFC assessment. Dkt. No. 16 at 6–10; Dkt. No. 19 at 1–2. For his part, the Commissioner insists that, despite Plaintiff's obesity and varicose veins, substantial evidence in the record supports the ALJ's physical RFC findings, and the ALJ complied with regulations applicable to these impairments. Dkt. No. 18 at 7–8.

At step two of the sequential evaluation process, the ALJ characterized Plaintiff's obesity and varicose veins as "nonsevere impairments." AR at 19. In reaching this determination, the ALJ emphasized that Plaintiff had not alleged disability due to a physical impairment in her DIB application and, relatedly, nor did she report physical limitations in the September 2019 Function Report that she submitted to the agency. AR at 19; *see also* AR at 25 (citing AR at 336–44). In addition, the ALJ noted that, in December 2019, Plaintiff "reported that her physical health was very good." AR at 19 (citing AR at 369). The ALJ also discussed Plaintiff's primary care provider's notation, in January 2019, that her type II diabetes mellitus had resolved with weight loss, and . . . that her hypertension had also improved and was controlled with medication." AR at

19 (citing AR at 551). As to Plaintiff's venous insufficiency, the ALJ noted that, during an October 2021 visit for varicose veins, her provider concluded that Plaintiff "could walk more than an hour without rest" and "she treated the condition conservatively." AR at 19 (citing AR at 872–74).

To the extent Plaintiff challenges the ALJ's determination that her obesity and varicose veins were non-severe impairments, any error in that determination was harmless, as the ALJ found *some* severe impairments and continued beyond step two of the sequential evaluation process. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *Leedy v. Berryhill*, No. 16-224 GJF, 2017 WL 3382062, at *6–7 (D.N.M. Aug. 4, 2017). Moreover, the Court is satisfied that substantial evidence supports the ALJ's determination that Plaintiff's obesity and varicose veins were non-severe impairments.

As Plaintiff observes, the ALJ was required to consider even her *non-severe* impairments (*i.e.*, obesity, varicose veins, diabetes mellitus, hypertension, and narcolepsy) when assessing her RFC. Dkt. No. 16 at 6 (citing *Langley*, 373 F.3d at 1124). Indeed, 20 C.F.R. § 404.1545 provides that an ALJ must consider *all* medically determinable impairments in formulating an RFC. Here, the ALJ appears to have done just that when, at step four, she determined that "a combination of [Plaintiff's] nonsevere physical impairments limit her to medium work with occasional climbing and no working around heavy machinery with fast moving parts or at unprotected heights." AR at 26 (emphasis added). In addition, the ALJ set forth the applicable analytical standard: that she "must consider all of the claimant's impairments, including impairments that are not severe." AR at 17–18 (citing 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p). The Court takes the ALJ at her word that she did as she said and considered each of Plaintiff's *non-severe* physical impairments, including their combined effects. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)

("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

Moreover, the ALJ explained that Plaintiff's "lack of allegations regarding her physical impairments and [her] ability to carry out activities of daily living independently indicate that she can perform work within [the assessed] physical limitations." AR at 26–27. The record suggests that the ALJ considered Plaintiff's obesity and varicose veins, in combination with her other non-severe physical impairments, to reach a physical RFC that included some limitations. Insofar as Plaintiff contends that the ALJ failed to consider the impact her obesity and varicose veins have on her ability to function, the ALJ's decision demonstrates otherwise. And to the extent Plaintiff suggests that the ALJ was "required to include limitations from obesity" or from any other non-severe impairments in the RFC (Dkt. No. 16 at 6), her contention lacks support in the law.

As the Commissioner points out, no medical source offered a persuasive medical opinion finding that Plaintiff required *greater* physical limitations than those assessed by ALJ, and Plaintiff does not suggest that such an opinion exists.[3] Dkt. No. 18 at 5 (citing AR at 100, 110–11; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). Plaintiff instead argues that the physical RFC that the ALJ assessed is "unsupported by the evidence." Dkt. No. 16 at 7; Dkt. No. 19 at 2. The Court disagrees. The ALJ noted that Plaintiff herself did *not* claim any disabling physical impairments in her DIB application, nor did she do so in her September 2019 Function Report. AR at 19, 25 (citing AR at 337, 359–66)). The ALJ further observed that by early 2019 Plaintiff had lost more than 200 pounds with diet and exercise (AR at 19, 22, 25 (citing AR at 550), and by the fall and winter of that same year, she reported exercising, running, and working out up to eight

[3] Although state agency medical consultant Scott Spoor, M.D. found Plaintiff had "severe physical impairments," the ALJ determined that "there was insufficient evidence" to support such a severity finding, which she described as "not persuasive." AR at 26 (citing AR at 109–15). Plaintiff does not suggest that the ALJ's assessment of Dr. Spoor's prior administrative findings was in error.

hours per day, including being a licensed Zumba instructor, and independently carrying out all of her activities of daily living. AR at 22–24 (citing AR at 495, 638, 653, 645, 649); *see also* AR at 363–64 (reporting, in her September 2021 Function Report, that she exercises everyday for four to five hours and that she can walk for "miles" before needing to stop).

Plaintiff also contends that diagnosis of "comorbid conditions of diabetes, hypertension, and varicose veins . . . indicate[s] that her obesity [was] impacting her daily life, and she [was] not as unlimited as the ALJ" assessed. Dkt. No. 19 at 2. Relatedly, Plaintiff submits that it is "well established that obesity increases the risk for diabetes, hypertension and varicose veins." Dkt. No. 16 at 7 (citing various articles published on www.mayoclinic.org). The Commissioner, in contrast, insists that "the ALJ recognized Plaintiff's obesity diagnosis, but detailed that the overall record did not demonstrate the need for more workplace restrictions than assessed in the RFC." Dkt. No. 18 at 8. Likewise, the Commissioner maintains that the ALJ reasonably considered Plaintiff's varicose veins in assessing her RFC. *Id*. at 9.

SSR 19-2p addresses the proper evaluation of obesity and related conditions. *See* SSR 19-2p, 2019 WL 2374244. It directs ALJs to consider how obesity and the combined effects of obesity and other impairments affect a plaintiff's ability to "perform routine movement and necessary physical activity within the work environment." *Id.* at *22925–26. Although Plaintiff contends that the ALJ's limitation to medium work, as opposed to some lower exertional level, suggests that she failed to take her obesity and varicose veins into consideration (*see* Dkt. No. 16 at 7–9), the Court is unconvinced. Instead, the ALJ's discussion of the evidence and the rationale she articulated for her factual findings demonstrate that she considered the "*combination* of [Plaintiff's] nonsevere physical impairments," including her obesity and varicose veins, in assessing Plaintiff's physical RFC. AR at 26 (emphasis added).

The ALJ recounted a January 2019 primary care provider note that indicated Plaintiff's diabetes resolved with weight loss and her hypertension improved with weight loss and was controlled with medication. AR at 19, 25 (citing AR at 551) (noting that Plaintiff had lost more than 200 pounds and that she was "removing [diabetes mellitus] from her problem list" and lowering her dose of Lisinopril for hypertension). The ALJ also highlighted an October 2021 medical visit for evaluation of Plaintiff's varicose veins at which the provider noted that, after losing more than 200 pounds, Plaintiff could "tolerate walking more than one hour without rest" and opted to "continue conservative therapy," including compression stockings, analgesics for pain as necessary, weight reduction, therapeutic leg elevation, and an exercise program of calf muscle pumping activity. AR at 25 (citing AR at 872–74). Although Plaintiff suggests that her ability to walk more than an hour without rest does not necessarily translate to the ability to perform medium work (*i.e.*, to stand and walk for up to six hours in one day), she fails to identify a medical opinion indicating that she was more limited in those abilities. And notably, only a month before her October 2021 evaluation for varicose veins, Plaintiff indicated that her medical impairments did not affect her ability to stand or walk, the latter of which she reported being able to do for "miles" before needing to stop. *See* AR at 364. Also around this time, Plaintiff reported exercising anywhere from four to five hours per day. *See* AR at 363 (reporting, in September 2019, that she exercised "everyday for 4-5 hours."); *see also* AR at 638 (reporting, in December 2019, that she worked out up to 8 hours per day). To be sure, Plaintiff's participation in regular and prolonged exercise constitutes substantial evidence to support the ALJ's assessment that she could perform medium work despite her obesity, varicose veins, and other non-severe impairments.

Having examined the ALJ's decision and the record, the Court concludes that, in assessing Plaintiff's RFC, the ALJ properly considered her non-severe impairments, singly and in

combination with her other impairments. Moreover, there is substantial evidence in the record to support the physical RFC the ALJ assessed. Even if Plaintiff is correct that, given her documented symptoms and complaints, a finding that she was capable of performing something less than medium work would have been an acceptable conclusion, that alone does not render the ALJ's RFC finding unsupported by substantial evidence. *See Lax*, 489 F.3d at 1084.

**B. The ALJ did not commit reversible error by failing to incorporate Plaintiff's moderate mental limitations into the RFC.**

Next, Plaintiff contends that the ALJ failed to incorporate Plaintiff's moderate limitation in the ability to concentrate, persist, and maintain pace into the RFC and, further, that the resulting mental RFC is contrary to the medical evidence of record. Dkt. No. 16 at 13. The Commissioner urges the Court to reject any suggestion that "a moderate limitation at step two automatically translates into a functional workplace limitation," but argues that, in any event, the ALJ's RFC *does* include a limitation in maintaining concentration, persistence, or pace. Dkt. No. 18 at 11–12.

At step three of the sequential evaluation process, the ALJ considered whether Plaintiff's mental impairments satisfied the so-called "paragraph B criteria," and she determined that Plaintiff had moderate limitations in the areas of "understanding, remember, or applying information," "[i]nteracting with others," concentrating, persisting or maintaining pace," and "adapting or managing oneself." AR at 19–20. As she proceeded to step four, the ALJ explained that the limitations found at step three were *not* an RFC assessment. AR at 20. She further explained that the mental RFC assessment at steps four and five "requires a more detailed assessment of the areas of mental functioning." AR at 20. Conducting that "more detailed assessment" at step four, the ALJ determined that Plaintiff:

> could understand and remember simple tasks; could maintain attention, concentration, and pace for simple tasks in two-hour periods; could not have public contact; could perform tasks that focus on objects; could have occasional coworker

> and supervisory contact other than periods of instruction (periods of instruction being the initial training and explanation of changes to routine or tasks); and could make simple work-related decisions.

AR at 21.

Plaintiff contends that the ALJ was required to incorporate into her step-four RFC the step-three moderate limitation she assessed in Plaintiff's ability to concentrate, persist, and maintain pace, or to explain why she rejected that limitation. Dkt. No. 16 at 13 (citing SSR 96-8p; *Hamlin*, 365 F.3d at 1215 (discussing the evaluation of treating physician opinions)). Judge Yarbrough's rejection of a similar argument in *Asher M. v. Kijakazi* is instructive:

> Plaintiff argues that the ALJ erred in assessing these moderate and marked limitations in mental work-related abilities without accounting for these limitations in the RFC. Plaintiff focuses on the moderate limitation in the ability to concentrate, persist, or maintain pace, and marked limitation in the ability to interact with others, arguing that the RFC fails to incorporate these findings or explain why they were rejected. Plaintiff argues that "[a]lthough the ALJ's description of the mental limitations at step three is not an RFC assessment, however, the ALJ may not simply stop there." "The ALJ's decision should properly account for those step three limitations or explain their omission." Plaintiff further argues that had these limitations been incorporated, the VE's testimony would have mandated a finding of disability. Plaintiff argues the error is therefore harmful, as the RFC does not account for the various findings such as a marked limitation in the ability to interact with coworkers and supervisors.
>
> The Court rejects the argument that an ALJ must either mechanically mirror step-three findings in the RFC, or explain the omission. As the Commissioner points out, this argument has been rejected by the Tenth Circuit multiple times in a series of unpublished opinions. *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747-48 (10th Cir. 2013) (unpublished) (the plaintiff "fails, however, to identify a requirement that step three findings concerning the listings be incorporated into the RFC determination used in steps four and five"; there is no requirement to even discuss a step-three finding in the RFC narrative because "the ALJ's statement at step three that [Plaintiff] exhibited 'no more than' moderate difficulties maintaining social functioning is neither a medical fact nor nonmedical evidence"); *Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) (unpublished) (stating that this argument "simply misunderstands the sequential evaluation process" (internal quotation marks omitted)); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) ("the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case"); *Beasley*

> *v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). The Court finds these cases persuasive. The requirement at step four is to explain how the ALJ weighed evidence and fashioned the RFC. SSR 96-8p, 1996 WL 374184, at *7. This does not encompass a requirement to account for the step-three findings, which have a different purpose in the sequential evaluation process.

No. CV 21-156 SCY, 2022 WL 2952884, at *3 (D.N.M. July 26, 2022) (internal citations omitted).

The Court considers Judge Yarbrough's analysis to be well-reasoned and supported by the law in this circuit, even if primarily articulated in unpublished opinions. Moreover, the Tenth Circuit was clear in its *published* opinion in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015) that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment." *Id.* at 1203. Accordingly, to the extent Plaintiff argues that the ALJ necessarily erred by failing to incorporate a step-three moderate limitation into the RFC she assessed at step four or to explain why she rejected that limitation, her argument fails.

Equally, Plaintiff fails to establish that the ALJ's RFC did not account for a moderate limitation in the ability to maintain concentration, persistence, or pace. As Judge Riggs has observed, "[m]ultiple cases have held that an ALJ adequately considers or incorporates a moderate limitation assessed . . . where the ALJ incorporates how the claimant is limited in the ability to perform work-related activities, even where the ALJ does not expressly repeat the moderate limitations." *Padilla v. Bisignano*, No. 1:24-cv-00658 KWR/GJF, 2025 WL 2694024, at * 12 (D.N.M. Sept. 22, 2025). As examples, Judge Riggs cited *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Lee v. Colvin*, 631 F. App'x 538, 540–42 (10th Cir. 2015).

First, she noted that *Smith* determined that "[t]he ALJ's RFC, which limited the plaintiff to only simple, repetitive, and routine tasks, . . . incorporated . . . moderate limitations" assessed by

the state agency consultant. *Padilla*, 2025 WL 2694024, at *12 (citing *Smith*, 821 F.3d at 1268–69). Of interest here, the state agency consultant in *Smith* assessed various moderate limitations, including in the ability to "maintain concentration, persistence, and pace." 821 F.3d at 1268. The plaintiff there argued (as Plaintiff does here) that the ALJ erred by failing to include assessed moderate limitations in the RFC. *Id*. Significantly, the Tenth Circuit rejected that argument, holding that the ALJ properly "incorporated the functional limitations of [the plaintiff's] nonexertional impairments" by limiting the plaintiff to simple, repetitive, and routine tasks. *Id.* at 1269. And as Judge Riggs emphasized in *Padilla*, neither district court decisions nor out of circuit decisions "can or have overruled *Smith*." *Padilla*, 2025 WL 2694024, at *13.

Also pertinent here is Judge Riggs' discussion of Tenth Circuit's holding in *Lee v. Colvin*: that by limiting the plaintiff to "simple tasks," the ALJ adequately incorporated into the RFC moderate limitations in the ability to maintain attention and concentration. *Padilla*, 2025 WL 2694024, at *12 (citing *Lee*, 631 F. App'x at 540–42). And notably, the undersigned has reached a similar conclusion under similar circumstances. *See, e.g., Hite v. Saul*, 457 F. Supp. 3d 1175, 1186–93 (D.N.M. 2020) (citing *Smith* and *Vigil* and holding that "the RFC's limitation of Plaintiff to simple and unskilled work more than adequately accounted for" moderate limitations in the ability to maintain attention, concentration, persistence, and pace).

Thus, turning to the ALJ's RFC in this case, the Court is satisfied that, by limiting Plaintiff to (1) understanding and remembering only *simple* tasks; (2) maintaining attention, concentration, and pace for only *simple* tasks in two-hour periods; (3) performing tasks that focus on objects; and (4) making only *simple* work-related decisions, the ALJ adequately accounted for a moderate limitation in maintaining attention, concentration, persistence, and pace. The Court finds no reversible error in this regard.

**C. The ALJ did not err in evaluating the prior administrative findings of Dr. McGaughey or in failing to incorporate into the RFC his assessed moderate limitations.**

Next, Plaintiff argues that the ALJ improperly evaluated the prior administrative findings of Mark McGaughey, Ph.D., the non-examining state agency psychological consultant. Dkt. No. 16 at 14–17. The Commissioner maintains that the ALJ reasonably evaluated Dr. McGaughey's assessment of Plaintiff's functioning. Dkt. No. 18 at 13.

Because Plaintiff filed her application after March 27, 2017, the regulations found at 20 C.F.R. § 404.1520c govern how the ALJ must evaluate opinion evidence. Medical opinions from non-examining state agency consultants, like Dr. McGaughey, are classified as "prior administrative findings[,]" but the rules for weighing them are the same as for weighing medical opinions. *See Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5 (D.N.M. May 25, 2021) (citing 20 C.F.R. §§ 404.1531a, 404.1520c). Under the revised regulations, no specific evidentiary weight or deference is given to prior administrative findings. *See* 20 C.F.R. § 404.1520c(a). Instead, they are evaluated on equal footing using the factors enumerated in the regulations. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Of the enumerated factors, "supportability" and "consistency" are the "most important," and an ALJ must articulate how she considered these two factors when assessing the prior administrative findings' persuasive value. *See* 20 C.F.R. § 404.1520c(b)(2). In addition, when an ALJ considers the persuasiveness of a medical source's opinions or findings, she must consider all relevant evidence in the case record, *see* 20 C.F.R. § 404.1520b, and must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). But the ALJ's persuasiveness analysis itself need only be sufficient to permit a subsequent reviewer to follow her reasoning. *See Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th

Cir. Oct. 28, 2022) (citing 20 C.F.R. § 416.920c(b)(1); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

When preparing their medical assessment forms, non-examining state agency psychological consultants begin by completing the Psychiatric Review Technique ("PRT"). *See Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *5 (D.N.M. Oct. 19, 2020). The PRT is used at steps two and three of the initial-level sequential evaluation process to determine whether a medically determinable mental impairment is severe and, if so, whether it meets or medically equals a listed impairment. *See* Program Operation Manual System ("POMS") DI § 24583.005(A). Here, Dr. McGaughey examined the Listing of Impairment's "Paragraph B" criteria for mental impairments at the initial level of review. AR at 101. Having done so, he assessed only mild limitations in Plaintiff's abilities to "[u]nderstand, remember or apply information" and to "[a]dapt or manage oneself." AR at 101. As to the areas of "interact[ing] with others" and "adapt[ing] or manag[ing] oneself," Dr. McGaughey assessed moderate limitations in the PRT. AR at 101.

At step four of the sequential evaluation process, state agency consultants complete the Mental Residual Functional Capacity assessment ("MRFC"), to assess a claimant's mental RFC. *See Young v. Berryhill*, No. CIV 16-1024 GJF, 2018 WL 840022, at *14 n.11 (D.N.M. Feb. 13, 2018); POMS DI § 24510.060(A)(1). While the "PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, the MRFC has more focused categories for use in determining RFC." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013). The MFRC form directs the consultant to first "record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function" in a question-and-answer

worksheet.[4] *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (quoting POMS DI § 24510.061(A)). Next, the consultant is directed to "prepare a narrative statement of mental RFC." *Id*. If a consultant determines that a claimant has limitations in an area of functioning, he is instructed to "[e]xplain in narrative form" the "capacities and /or limitations." *See* AR at 104–05.

In the worksheet portion of the MRFC, Dr. McGaughey found Plaintiff moderately limited in the following areas of mental functioning:

- The ability to work in coordination with or in proximity to others without being distracted by them.
- The ability to interact appropriately with the general public.
- The ability to accept instructions and respond appropriately to criticisms from supervisors.
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
- The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.
- The ability to respond appropriately to changes in the work setting.

AR at 104–05. Then, in the narrative portion, he provided a summary of the relevant evidence in the record:

> MDIs [medically determinable impairments] of MDD [major depressive disorder], PTSD, anxikety [sic], and borderline personality d/o. Recent MSE [mental status examination] wnl [within normal limits]. Claimant able to care for children, go out alone, drive, shop, prepare meals, do housework, exercise, but has no friends. She presented documentation to CEP [consultative examining psychologist] regarding not being allowed back at YWCA due to verbally aggressive behavior. MSE was generally wnl. CEP opinion generally consistent with EOR [evidence of record].

[4] Previously, state agency consultants completed special form SSA-4734-F4-SUP, which was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). *Vienna v. Saul*, No. 2:18-cv-00783-LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). Although MRFCs completed through eCAT no longer include the same section labels, "parties and the courts have continued to refer to the checkbox portion of each MRFC as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id*. The Court refers herein to these separate sections of the MRFC as the "worksheet portion" and the "narrative portion."

In addition, Dr. McGaughey supplied a narrative statement of Plaintiff's mental RFC, concluding that she "retains the capacity to understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors on [an] incidental basis, and respond appropriately to changes in a work setting." AR at 106.

Plaintiff contends that the ALJ made two errors in evaluating Dr. McGaughey's opinions: (1) "fail[ing] to discuss the requisite persuasiveness factors and specify the rationale behind her determination that the opinion was 'partially [sic] persuasive,'" and (2) "fail[ing] to incorporate Dr. McGaughey's moderate limitations into the RFC or explain why she rejected them." Dkt. No. 19 at 5; *see also* Dkt. No. 16 at 14–15 (arguing that the ALJ "failed to properly discuss the requisite factors under 20 C.F.R. § 404.1520c and also failed to include all of the doctor's assessed moderate limitation in assessing the RFC").

***i. Persuasiveness Analysis***

In discharging her duty to evaluate the persuasiveness of Dr. McGaughey's prior administrative findings, *see* 20 C.F.R. § 404.1520c(b)(2), the ALJ explained that she found only "partly persuasive" Dr. McGaughey's narrative mental RFC. AR at 25. In terms of supportability, the ALJ found Dr. McGaughey's prior administrative findings "supported by the summary of the record noting difficulties relating with others and depressed mood but normal cognition." AR at 25. Indeed, Dr. McGaughey's summary of the record, which preceded his narrative RFC, highlighted many of the activities in which Plaintiff participated while at the same time acknowledging that she did not have friends and had presented evidence of verbally aggressive behavior. AR at 106. Dr. McGaughey also observed that Plaintiff's mental status examinations were generally within normal limits. AR at 106. In terms of consistency, the ALJ described Dr.

McGaughey's findings as "mostly consistent with the record," but she explained that "the record supports slightly greater limitations." AR at 25. Expounding on her supportability finding, the ALJ went on to summarize the contents of (1) Plaintiff's September 2019 Function Report, (2) Mario Di Biase, Psy.D's November 2019 Psychological Consultative Examination Report, and (3) the results of Plaintiff's mental status examinations during follow-up visits with her psychiatric provider in August, September, October, and December of 2023. AR at 25–26 (citing AR at 359–66, 492–98, 951–52, 958–59, 962–63, 965–66).

With respect to the Function Report, the ALJ acknowledged that Plaintiff alleged "problems getting along with others, with memory, completing tasks, concentrating, following instructions, and handling stress and changes in routine," but the ALJ emphasized that Plaintiff *also* reported that she "gets her children ready for school in the morning, helps her children with their homework, prepares her own meals daily, does laundry, drives a car, goes grocery shopping, can manage her own finances, and does not need someone to accompany her places." AR at 25. Turning to the November 2019 Psychological Consultative Examination Report, the ALJ noted that Plaintiff was

> dressed appropriately[,] . . . was cooperative and pleasant[,] . . . described her overall mood to be predominantly depressed and frequently irritable[, but] [h]er memory appeared grossly intact[,] [s]he could complete serial threes without difficulty[,] [h]er abstract thinking appeared to be within normal limits[,] [s]he had insight into her depression and anxiety[,] . . . demonstrated no obvious impairment in judgment[,] . . . appeared to process information well[,] . . . did not appear to have difficulty making sound, reasonable, and responsible decisions[, and] . . . indicated that she carried out all of her activities of daily living independently.

AR at 26 (citing AR at 492–96). Finally, the ALJ observed that "[d]uring mental status exams with psychiatry, [Plaintiff's] hygiene was appropriate[,] [h]er concentration was intact[,] [s]he made good eye contact[,] [h]er memory was normal[,] [h] er attention was focused[,] [s]he was cooperative[,] [h]er insight was good[, and] [h]er judgment was intact." AR at 26 (citing AR at

359–66, 492–98, 951–52, 958–59, 962–63, 965–66).

In light of the evidence of record, the ALJ's RFC limited Plaintiff to understanding and remembering only *simple* tasks and making *simple* work-related decisions, whereas Dr. McGaughey found Plaintiff retained the capacity to understand, remember and carry out "*detailed but not complex* instruction" and to "make decisions." *Compare* AR at 21, *with* AR at 106 (emphasis added). The ALJ also limited Plaintiff to maintaining attention, concentration, and pace for only *simple* tasks in two-hour periods, whereas Dr. McGaughey found Plaintiff retained the capacity to "attend and concentrate for two hours at a time." *Compare* AR at 21, *with* AR at 106 (emphasis added). Finally, the ALJ limited Plaintiff to no public contact and "*occasional* coworker and supervisory contact other than periods of instruction," whereas Dr. McGaughey found Plaintiff retained the capacity to "interact adequately with co-workers and supervisors on an *incidental* basis." *Compare* AR at 21, *with* AR at 106 (emphasis added). As to Plaintiff's interactions with co-workers and supervisors, the ALJ emphasized that Dr. McGaughey had not defined the phrase "incidental basis." AR at 25.

Plaintiff does not dispute that the ALJ's RFC was *more restrictive* than that of Dr. McGaughey. Even so, she contends that the ALJ committed reversible error by "fail[ing] to explain which parts of [Dr. McGaughey's] opinion she adopted, . . . which she rejected, [and by] failing to cite with 'sufficient particularity to allow for judicial review.'" Dkt. No. 19 at 6 (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court agrees with the Commissioner's assessment of Plaintiff's argument: she demands a level of articulation that is not required. *See* Dkt. No. 18 at 15 (citing 20 C.F.R. §404.1520c(a); *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012)). After all, the ALJ articulated the overall persuasiveness of Dr. McGaughey's prior administrative findings (*i.e.*, "partly persuasive") *and* explained how and why she found his

findings “supported” by his summary of the record and “mostly consistent” with other evidence of record. Moreover, comparing the ALJ’s RFC to Dr. McGaughey’s findings, it is not difficult to discern which parts of Dr. McGaughey’s findings the ALJ adopted and which she rejected. In short, the ALJ rejected Dr. McGaughey’s findings to the extent he found Plaintiff capable of performing more than “simple” work. The ALJ also rejected a limitation to coworker and supervisor interactions on an “incidental basis” in favor of what she considered a more precise and vocationally relevant limitation to “occasional contact” with coworkers and supervisors. Ultimately, the Court is satisfied that the ALJ’s rejection of these aspects of Dr. McGaughey’s findings, and her *tempering* of the RFC in Plaintiff’s favor, were consistent with the law and supported by easy-to-follow reasons and substantial evidence.

***ii. Incorporation of Moderate Limitations***

Plaintiff challenges yet another aspect of the ALJ’s evaluation of Dr. McGaughey’s prior administrative findings. She insists that the ALJ erred by failing to incorporate moderate limitations that Dr. McGaughey found in “critical areas” or to explain why she rejected them. Dkt. No. 19 at 5–6. Specifically, Plaintiff highlights a moderate limitation that Dr. McGaughey assessed in the worksheet portion of his MRFC in Plaintiff’s “ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.” Dkt. No.16 at 15; *see also* AR at 105. Plaintiff reiterates that, despite assessing this moderate limitation, Dr. McGaughey nevertheless opined in the narrative portion of his MRFC that Plaintiff could “interact adequately with co-workers and supervisors on [an] incidental basis.” Dkt. No. 16 at 15 (citing AR at 106). According to Plaintiff, by imposing only a “temporal limitation” on her social interactions, Dr. McGaughey failed to “explain the latter part of [his assessed moderate] limitation[:] ‘without distracting [her coworkers of peers] or exhibiting behavioral extremes.’” Dkt. No. 19 at 6. Plaintiff further suggests

that Dr. McGaughey's failure to incorporate this moderation limitation into his narrative RFC was compounded when the ALJ, in turn, also failed to incorporate the same moderate limitation into the RFC she assessed. *Id*. at 7. That is, although she limited Plaintiff to simple work, no public contact, and occasional contact with coworkers and supervisors, the ALJ still failed to explain why she rejected Dr. McGaughey's assessed moderate limitation in getting along with coworkers and peers, which led to an under-inclusive RFC requiring remand. Dkt. No. 16 at 16–17; Dkt. No. 19 at 7.

In support of her argument, Plaintiff relies on *Bosse v. Saul*, No. 2:18-CV-00475-LF, 2019 WL 3986046 (D.N.M. Aug. 23, 2019), in which Judge Fashing held that a non-examining state agency psychological consultant failed to incorporate into the narrative portion of his MRFC a moderate limitation he assessed (in the worksheet portion of the same MRFC) in the plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. at *5. Judge Fashing reasoned that although limiting the plaintiff to "relat[ing] to others on a superficial work basis . . . partially explain[ed] the moderate limitation[,] . . . [the consultant] did not adequately explain the latter part of the limitation." *Id*. That is, according to Judge Fashing, it was not obvious that " 'relating to others on a superficial work basis' adequately account[ed] for the interactive social skills necessary to avoid distracting coworkers or peers or avoid exhibiting behavioral extremes." *Id*.

But significantly, the undersigned's view of the proper incorporation of assessed moderate limitations has historically diverged from that of Judge Fashing. *See Bernadette S. v. Dudek*, No. 24-0124 JB/GJF, 2025 WL 892944, at *4–7 (D.N.M. Mar. 24, 2025) (examining the manner in which the undersigned's view of incorporation of moderate limitations differs from that of Judges Fashing and Khalsa, concluding that "Magistrate Judge Fouratt's approach is correct," and

adopting the undersigned's Proposed Findings and Recommended Disposition); *see also Cimino v. Bisignano*, No. 1:25-cv-0459 DLM, 2026 WL 295704, at * 4 (D.N.M. Feb. 4, 2026) (describing a "rift" in the district with respect to the proper incorporation of moderate limitations). The undersigned has expressly declined to follow Judge Fashing's lead in rejecting a limitation to "simple work" as one that adequately accounts for assessed moderate limitations. *See, e.g., Nance v. O'Malley*, No. 23-641 GJF, 2024 WL 1675441, at *5 (D.N.M. Apr. 18, 2024) (citing *Bosse* for the proposition that several district court opinions have looked to "unpublished and non-binding Tenth Circuit cases" to support their "attempt[] to distinguish" the published decisions in *Vigil* and *Smith*, in which the Tenth Circuit held that ALJs may account for moderate limitations by limiting a plaintiff to "simple work").

Consistent with prior treatment of this issue, the undersigned is once again guided principally by the Tenth Circuit's binding decision in *Smith*, in which the Tenth Circuit determined that the ALJ adequately accounted for moderate limitations assessed by a state agency consultant—including  in the area of getting along with coworkers or peers without distracting them or engaging in behavior extremes—by assessing an RFC that limited the plaintiff to no face-to-face contact with the public and only simple, repetitive, and routine tasks. 821 F.3d at 1269. This is especially so where, as here, the ALJ not only limited Plaintiff to no public contact and to simple tasks, she added *another* relevant limitation: "occasional coworker and supervisory contact other than periods of instruction (periods of instruction being the initial training and explanation of changes to routine or tasks)."[5] Because the connection between the moderate limitation at issue and the ALJ's corresponding RFC limitations is obvious, nothing more was required. *See Parker*

[5] As discussed above, Dr. McGaughey, too, included a similar but distinctly-worded limitation to interactions with co-workers and supervisors "on [an] incidental basis." AR at 106.

*v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019). Plaintiff's reliance on *Bosse* notwithstanding, the Court is satisfied that by limiting Plaintiff to no public contact, simple work, and only occasional contact with coworkers and supervisors, the ALJ's RFC adequately accounted for Dr. McGaughey's assessed moderate limitation in Plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[6]

**D. The ALJ did not err in evaluating Plaintiff's subjective statements concerning her mental impairments.**

Next, Plaintiff challenges the ALJ's evaluation of her subjective complaints, arguing that the ALJ's findings were "contrary to the evidence and law and ignore[] [Plaintiff's] symptoms and limitations stemming from her mental impairments." Dkt. No. 16 at 17. The Commissioner insists that the ALJ applied the correct legal standards and that her decision is supported by more than a mere scintilla of evidence. Dkt. No. 18 at 18–19.

SSR 16-3p defines the two-step process an ALJ must use when evaluating a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms such as pain." *Id*. at *3. At the second step, after the ALJ has found such an impairment, she "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id*. The ALJ considers the record evidence, the claimant's statements, the medical and non-medical source statements, and a non-exhaustive list of factors provided in 20 C.F.R. § 404.1529(c)(3), which include:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;

[6] To the extent Plaintiff contends that Dr. McGaughey also failed to incorporate into the narrative portion of his MRFC his own assessed moderate limitation in Plaintiff's ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, the Court is equally unconvinced.

3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR at 22. Plaintiff insists that, in so finding, the ALJ failed to sufficiently consider the SSR 16-3p factors with respect to her subjective complaints of psychiatric symptoms. Dkt. No. 19 at 8.

Relevant to SSR 16-3p, the ALJ explicitly discussed:

***Daily activities:*** The ALJ observed that Plaintiff reported getting her children ready for school in the morning, helping them with their homework, preparing her own meals daily, doing laundry, driving a car, going to the grocery store and to other places on her own, and managing her own finances. AR at 21. The ALJ emphasized Plaintiff's reports that she carried out all of her activities of daily living independently. AR at 23. The ALJ acknowledged Plaintiff's testimony that she has difficulty with chores and that it sometimes takes her three hours to prepare dinner. AR at 21. She also noted that Plaintiff reported taking college courses online, at times full-time, earning "mostly As and Bs." AR at 24. At the same time, the ALJ acknowledged Plaintiff's testimony that she "failed some" courses and received "special accommodations" from professors in others. AR at 22, 24. Finally, the ALJ highlighted Plaintiff's reports of engaging in prolonged

physical exercise, at times up to eight hours per day, including running, working out, and being licensed to teach Zumba. AR at 22–23.

***The location, duration, frequency, and intensity of symptoms and factors that precipitate and aggravate those symptoms:*** The ALJ reviewed Plaintiff's complaints of visual and auditory hallucinations, paranoia, and anxiousness. AR at 21–22. She mentioned Plaintiff's testimony that she worries and avoids large groups, in part because she is afraid of being part of a mass shooting. AR at 21. The ALJ discussed Plaintiff's reports of being predominantly depressed and irritable as well as either sleeping poorly or sleeping too much. AR at 22–24. After two psychiatric hospitalizations in early 2023, the ALJ noted that by August 2023 Plaintiff reported doing fine, with improving symptoms. AR at 25. The ALJ acknowledged that Plaintiff had been assigned a guardian at the time of her February 2023 hospitalization, for a period of 12 months, but she observed that the "treatment notes from August to December 2023 indicate[d] that she no longer had the need for a guardian." AR at 25. Finally, the ALJ noted that in the second half of 2023, Plaintiff reported that she was not experiencing delusions, was not depressed, and that her anxiety resolved after she completed her final exams. AR at 25. The ALJ also recounted mental status examinations around this same time that were almost entirely normal. *See* AR at 24–25.

***Type, dosage, effectiveness, and side effects of any medication:*** According to the ALJ, Plaintiff's medication regimen for her mental impairments included prescriptions, at various times, for Prozac, Hydroxyzine, Vistaril, Abilify, Haldol, Clonazepam, Cogentin, and Modafinil. AR at 22–25. In discussing their side effects, the ALJ noted Plaintiff's testimony that she experienced muscle spasms and cramps. AR at 21. She also noted that Plaintiff had discontinued Prozac because she did not like the way it made her feel. AR at 23. The ALJ mentioned that, at the time that Plaintiff was hospitalized with hallucinations in April 2023, the provider explained that "she

had been stable on Haldol injunctions, but that her symptoms reverted when she switched to oral medication." AR at 23–24. The ALJ also mentioned that, by August 2023, Plaintiff reported "tolerating a low dose of Haldol, and . . . not . . . having any delusions." AR at 25 (citing AR at 965). The ALJ noted that Plaintiff declined to take certain prescribed medications, such as Trintellix, because "she did not want psychopharmacotherapy" and "was not interested in taking medications." AR at 22, 24. Ultimately, the ALJ summarized Plaintiff's history of pharmacological mental health treatment by observing that she "appeared mostly stable when on medications." AR at 24.

***Treatment other than medication:*** In addition to discussing Plaintiff's medications, the ALJ chronicled Plaintiff's weight loss (over 200 pounds) through diet and exercise as well as her use of psychotherapy, though noting "lengthy gaps in [Plaintiff's] psychiatric treatment." AR at 22–24.

Although Plaintiff cannot dispute that the ALJ discussed the factors above, she nevertheless takes issue with the ALJ's characterization of the evidence pertaining to these factors. Clearly, Plaintiff would have weighed the medical evidence differently. But to the extent she now asks the Court to reweigh the record evidence, the Court must decline. Taken as a whole, the ALJ's decision provides reasons, supported by substantial evidence, for not fully accepting Plaintiff's reported symptoms from her mental impairments. In the Court's view, the ALJ reasonably found that the objective medical evidence, Plaintiff's course of treatment, and her admitted abilities and activities of daily living suggest that she was less limited than alleged. The Court is satisfied that the ALJ adequately explained her findings pursuant to SSR 16-3p, and Plaintiff has not identified any meritorious reason for remand related to the ALJ's consideration of her subjective complaints.

**E. The ALJ did not err in minimizing Plaintiff's mental impairments.**

In addition to her challenges to the ALJ's evaluation of her mental impairments discussed above, Plaintiff argues more broadly that the ALJ's RFC assessment "minimize[s]" her mental impairments and contradicts the record. Dkt. No. 16 at 12. Plaintiff insists that she "is afflicted by a myriad of mental impairments which cumulatively led to her being unable to work." *Id*. at 10. The Commissioner, once again, maintains that the ALJ followed the applicable legal standards and that her findings are supported by substantial evidence in the record. Dkt. No. 18 at 10.

For her part, Plaintiff highlights two inpatient psychiatric hospitalizations in early 2023, auditory and visual hallucinations, documented instances of verbal aggression, multiple work attempts, self-reports of feeling "scattered," poor performance in college courses, and requests for accommodations from college professors. Dkt. No. 16 at 10–12; Dkt. No. 19 at 3. She insists that such evidence "is supportive of a more restrictive RFC." *Id*. Critically, though, the ALJ *discussed* the evidence and complaints that Plaintiff references, acknowledging that she experienced some difficulty with memory, understanding, concentration, and getting along with others, and including limitations in the RFC to account for those difficulties. *See* AR at 21, 23–26. With respect to Plaintiff's 2023 psychiatric hospitalizations, the ALJ acknowledged her inpatient treatment but noted that records from the months that followed suggested her symptoms stabilized after adjustments to her medication. AR at 23–25. The ALJ also took account of Plaintiff's varied mental status examination findings, some of which indicated mood abnormalities and pressured speech; others which noted normal memory, intact concentration, good attention, normal speech, logical thoughts, good insight, and intact judgment. AR at 19–20, 22–26. Finally, the ALJ highlighted a "lengthy gap[]" in Plaintiff's mental health treatment from late 2019 until June 2022, as well as some reported work/earnings in 2018, 2019, and 2023. AR at 18, 24–25.

The Court finds no indication that the ALJ ignored limitations caused by Plaintiff's mental

impairments and declines Plaintiff's implicit invitation to reweigh the evidence concerning her mental impairments. Although Plaintiff might have weighed the evidence differently, the Court is satisfied that the ALJ adequately explained how she accounted for Plaintiff's mental limitations and that her findings and RFC assessment are supported by substantial evidence.

## VI. CONCLUSION

In sum, the Court agrees with the Commissioner that the ALJ applied the correct legal standards and that her decision is supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand (Dkt. No. 16) be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.